BEALES, J., with whom HUMPHREYS, KELSEY, and McCLANAHAN, JJ.,
join, concurring, in part, and dissenting, in part.
I respectfully dissent from Section III.B, “The Felony Child Neglect Charge,” of the majority opinion. I find the evidence, taken in the light most favorable to the Commonwealth, which we must do on appeal since the Commonwealth prevailed in the trial court, would allow a rational fact finder to conclude that appellant, by placing A.C. in a supervisory role over his brother and sister, forced A.C. to face the same, if not potentially greater, dangers as his siblings. Therefore, I would affirm the felony child neglect conviction. I, however, concur with the remainder of the majority opinion’s holding and analysis.
In reviewing this record, I am mindful that “a reviewing court does not ‘ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.’ ” Crowder v. Commonwealth, 41 Va.App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, *440 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). “Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Jackson, 443 U.S. at 319, 99 S.Ct. at 2789. The Supreme Court explained further:
This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder’s role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution.

Id.

Here, the record reflects that appellant removed all three children from their beds around 2:00 a.m. on a mid-December night and took them to his studio. Appellant ordered A.C.’s brother and sister to guard against vandalism in a parking lot where that very crime had recently occurred. Appellant placed A.C. in charge of brother and sister and told A.C. to make sure his siblings remained outside at their posts—one child on “the far left side” and the other child on “the far right side”—at the back of the building. Appellant also told A.C. to make sure his siblings did not fall asleep. Although appellant told A.C. that he could come inside, A.C. was forced to spend most of the night outside making sure his brother and sister remained awake at their posts. After following these instructions for several hours, A.C. desperately began to telephone his aunt in an effort to escape the situation into which appellant, who was asleep inside the studio, had placed the children. After finally reaching his aunt, A.C. led his siblings on a thirty-minute trek down a highway in an attempt to flee from appellant and the situation into which he had placed them. The three minors marched down this highway for a significant distance in the early morning hours of this cold December night before being spotted and picked up by their aunt.
*441 By appointing A.C. the de facto guard of his siblings and instructing him to make sure brother and sister remained at their posts, appellant, who was asleep inside, placed A.C. in as much danger as he placed brother and sister. Given the recent vandalism in the parking lot and the orders to guard against new crimes, appellant’s actions potentially exposed all three of the children to criminal activity that could have resulted in injury to all of the children, including A.C., especially given A.C.’s protective nature regarding his siblings. By placing all three minor children in a situation where they could come in contact with a criminal element, appellant acted with reckless disregard for the health and safety of all three minor children.
Appellant potentially placed A.C. in a more threatening situation by making him responsible for his siblings. First, appellant ordered A.C. to supervise his siblings in a situation that constituted abuse of the younger children. In effect, appellant forced A.C. to become an abuser like himself. By charging A.C. with the responsibility of supervising his siblings and directing A.C. to make sure brother and sister remained outside on guard duty, appellant effectively ordered A.C. to abuse his own siblings, as appellant had done in the past when he commanded A.C. to chain brother to brother’s bed at night in the bedroom that the boys shared. Moreover, appellant certainly should have known that A.C., who had previously defended his brother and sister from appellant even when it involved injury to himself, would risk harm to himself again in order to defend his brother and sister against vandals or other dangers. Furthermore, appellant should have anticipated AC.’s desperation to save his brother and sister from this perilous situation. In other words, the escape attempted by A.C. and his siblings was foreseeable and exposed A.C. to additional dangers such as the traffic on a city highway on a dark early December morning, other criminal elements, and prolonged exposure to cold weather.
While the majority opinion emphasizes that A.C. was almost eighteen years old, I believe that the General Assembly intended to protect all minor children from felony neglect when *442 it enacted Code § 18.2-371.1(B)(1), even those close to the age of majority. Subsection B of the felony child neglect statute states, “Any parent, guardian, or other person responsible for the care of a child under the age of 18 whose willful act or omission in the care of such child was so gross, wanton and culpable as to show a reckless disregard for human life shall be guilty of a Class 6 felony.” Code § 18.2—371.1(B)(1) (emphasis added). “When the language of a statute is plain and unambiguous, we are bound by the plain meaning of that statutory language.” Lee County v. Town of St. Charles, 264 Va. 344, 348, 568 S.E.2d 680, 682 (2002). Therefore, given the clear, unambiguous nature of that language—“under the age of 18”—I do not believe this Court can go about interpreting the statute otherwise.
Although I certainly recognize that differences in the age of a minor may be a practical factor to weigh in the totality of the circumstances of a felony child neglect case, I nevertheless believe that being seventeen years old did not protect A.C. from the perilous situation he faced. A.C. was still a minor, and appellant was therefore responsible for his well-being (despite the fact that appellant callously ignored that responsibility). Finally, in my view, by holding that no rational trier of fact could have found appellant guilty on this charge, the majority opinion makes it virtually impossible to uphold almost any felony child neglect conviction in a case involving a seventeen-year-old victim. See Jackson, 443 U.S. at 319, 99 S.Ct. at 2789.
Because I indeed cannot say that no rational trial judge could find appellant guilty on this charge, I would, consequently, affirm appellant’s conviction for felony child neglect of A.C. Therefore, I must dissent from Section III.B of the majority opinion.
I do, however, concur in the remand of the conviction for unlawful wounding for resentencing.